# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JESSE GUTHRIE, # M-29282, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17-cv-1372-NJR |
| ) | |
| KIMBERLY BUTLER, ) | |
| KENT E. BROOKMAN, ) | |
| KELLY PIERCE, ) | |
| MONICA NIPPE, ) | |
| JACQUELINE LASHBROOK (Official ) | |
| Capacity only), ) | |
| and JOHN DOE SERGEANTS #1-3, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff, an inmate of the Illinois Department of Corrections currently incarcerated at Menard Correctional Center ("Menard"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He claims that Defendants held him under unconstitutional conditions of confinement and violated his due process rights. The Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

## The Complaint

On May 20, 2016, Plaintiff was charged with a disciplinary infraction and placed in the segregation unit in the North 2 Cell House at Menard. (Doc. 1, p. 9). His segregation cell was significantly smaller (about 45-48 square feet) than his former cell in the East Cell House (about 70 square feet). The segregation cell had a solid front which was covered in rust, in contrast to

the former cell which had an open front with good air flow. *Id.*

On May 23, 2016, Plaintiff pled guilty to the disciplinary charge for dangerous contraband (two 6-inch pieces of metal found in Plaintiff's property box in his cell). (Doc. 1, pp. 9, 18). The Adjustment Committee, chaired by Lt. Brookman, recommended punishment including 1 year in segregation, revocation of 1 year of good conduct credit, and restrictions for 1 year on Plaintiff's access to the yard, gym, and recreation. (Doc. 1, pp. 9, 19). Then-Warden Butler imposed that punishment. (Doc. 1, pp. 9, 20).

On June 29, 2016, Plaintiff appealed the disciplinary action to Pierce (Grievance Officer), challenging the "unlawful sanctions" of the 1-year restrictions on yard, gym, and recreation. (Doc. 1, p. 9). Pierce denied the appeal, and Butler declined to alter the punishment. (Doc. 1, p. 10).

According to Plaintiff's narrative, he was supposed to have access to the yard once a month, even during the time he was on yard restriction. On several occasions when he attempted to access the yard on the designated days for inmates on restriction, however, he was not allowed to go. On May 28, 2016, John Doe Sergeant #1 instructed the gallery officer not to allow Plaintiff to go to yard because he was "under investigation." (Doc. 1, p. 10). On June 24, 2016, John Doe Sergeant #2 ordered that Plaintiff was not to have yard access. *Id.* Again, on July 29, 2016, the day scheduled for the monthly access for those on yard restriction, Plaintiff was prevented from going to yard by John Doe Sergeant #3, who had "marked off" that Plaintiff could not attend yard. *Id.* Plaintiff sent a written inquiry to John Doe Sergeant #3 through another officer (Meade, who is not a Defendant), but never got a response.

On August 11, 2016, Plaintiff filed a grievance[1] to Nippe (Counselor), complaining about the yard denials on May 28, June 24, and July 29. (Doc. 1, pp. 10, 23-24). Nippe never

---

[1] Plaintiff's attached grievance on this matter bears the date of August 4, 2016. (Doc. 1, pp. 23-24).

3

responded. Later, Plaintiff asked Nippe about the grievance, and she told him that he "need[s] to stop filing grievances about the same issues with your yard. You're not going out, you're on restriction!" (Doc. 1, pp. 10-11).

Around August 15, 2016, Plaintiff complained to his gallery officer (Hanks, who is not a defendant) about the yard denial. On August 30, 2016, Hanks allowed Plaintiff to attend yard.

On September 17, 2016, Plaintiff filed an emergency grievance to Warden Butler, complaining that he had not been allowed to go to yard for 100 days (May 20 – August 30, 2016), during which he was only allowed out of the cell for one weekly shower or if he had a call pass. (Doc. 1, pp. 11, 25-26). He also complained about the tiny size of his cell, which was too small to allow for exercise, and its unsanitary condition. (Doc. 1, pp. 25-26). Plaintiff stated he was suffering from migraines, muscle lethargy, depression, and panic attacks as a result of the lack of physical activity. *Id.* Butler never responded.

Between August 30 and December 9, 2016, Plaintiff was permitted to attend yard one time per month for about 2-1/2 hours each time. Unfortunately, however, he still was unable to engage in meaningful exercise inside his cell during that period due to the lack of space. He shared the small cell with another prisoner. (Doc. 1, p. 11). On December 9, 2016, yard restriction was determined to be impermissible, and Plaintiff was allowed to attend all yards after that date.

Plaintiff was held in the small closed-front cell from May 20 to December 23, 2016. *Id.* For the year between May 20, 2016 and May 19, 2017, he was double-celled in cells that were too small for two inmates. Most of the cells were filthy and in poor condition, and lacked ladders for safe access to the top bunk. (Doc. 1, pp. 11-12).

Plaintiff was in Cell 246 in the North 2 Cell House from June 21 to December 23, 2016.

The cell was "covered in filth" that Plaintiff was unable to clean. The chuckhole for passing food into the cell had "layers of gunk and unidentifiable substances." (Doc. 1, p. 12). All metal surfaces were filthy and covered in rust. The toilet was pulled about two inches out from the wall, and the floor was broken up, which allowed bugs and spiders to enter the cell. These unsanitary conditions caused Plaintiff to develop a rash, diagnosed as jock itch. (Doc. 1, p. 12).

On December 23, 2016, Plaintiff was moved to Cell 605. This cell had an open front and was not rusty or filthy as the previous cell had been. It was still the same small size (45-48 square feet), however, and he shared it with another prisoner. As a result, the cell size still would not allow for physical activity. Plaintiff claims that he still was not allowed sufficient out-of-cell time to engage in a necessary amount of exercise.

Plaintiff asserts that Butler and Lashbrook are aware of the poor conditions of the cells in North 2 Cell House, but have done nothing to remedy them. Plaintiff was subjected to these conditions from May 20, 2016, to May 19, 2017, during which he suffered from migraines, lethargy, jock itch, depression, and anxiety. (Doc. 1, p. 12).

Plaintiff seeks compensatory and punitive damages, and injunctive relief to require Lashbrook to close down the North 2 Cell House and to furnish steps or ladders for the top bunks in all cells. (Doc. 1, pp. 13, 15).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed

without prejudice.

**Count 1:** Fourteenth Amendment claim against Butler, Brookman, and Pierce, for imposing disciplinary sanctions on Plaintiff that restricted him from access to the yard, gym, and recreation for 1 year;

**Count 2:** Eighth Amendment claim against Butler, Brookman, Pierce, Nippe, Lashbrook, and John Doe Sergeants #1-3, for denying Plaintiff the ability to engage in sufficient physical activity to maintain his health between May 2016 and May 2017, by confining him in a cell where he could not exercise and denying him sufficient access to out-of-cell activity;

**Count 3:** Eighth Amendment claim against Butler and Lashbrook, for subjecting Plaintiff to unsanitary conditions in his cell from May-December 2016, exposing him to vermin infestation and causing him to develop a rash.

As discussed below, Count 1 fails to state a claim upon which relief may be granted, and shall be dismissed without prejudice. Counts 2 and 3 shall proceed for further review against some of the Defendants.

**Dismissal of Count 1 – Imposition of Discipline**

Plaintiff did not challenge his disciplinary "conviction," which resulted from his guilty plea, and the Complaint indicates that the disciplinary action was never overturned. His grievances challenged only some components of his punishment – the 1-year restrictions on his access to the yard, gym, and recreation. Unfortunately, however, his claim for damages based on the imposition of disciplinary sanctions runs head-on into the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994).

In *Heck*, the Supreme Court held that a § 1983 action for damages that "would necessarily imply the invalidity of [a plaintiff's] conviction or sentence" is not cognizable until the conviction or sentence has been reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus. 512 U.S. at 486-87. For purposes of this

analysis, "the ruling in a prison disciplinary proceeding is a conviction." *Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011) (citing *Edwards v. Balisok*, 520 U.S. 641 (1997); *Gilbert v. Cook*, 512 F.3d 899, 900 (7th Cir. 2008)). In *Balisok*, the Supreme Court held that claims that "necessarily imply the invalidity of the deprivation of [the prisoner's] good-time credits" are not actionable under § 1983 unless the prison disciplinary decision has been invalidated, even though the restoration of credits is not sought as a remedy. 520 U.S. at 646-68. That is Plaintiff's situation. He is not seeking to have his sentence credit restored, but his claim that the yard, gym, and recreation restrictions were "unlawful sanctions" is a direct challenge to the disciplinary ruling. The claim for damages based on the allegedly "unlawful" punishment is barred by *Heck*, so long as the disciplinary conviction (which includes the loss of good conduct credits) remains intact, because an award of damages would undermine the validity of the disciplinary action.

For this reason, the Fourteenth Amendment claim against Butler, Brookman, and Pierce in **Count 1** shall be dismissed without prejudice. *See Polzin v. Gage*, 636 F.3d 834, 839 (7th Cir. 2011) (dismissal of *Heck*-barred claim should be without prejudice to allow it to be revived in the event the conviction is eventually invalidated).

### Count 2 – Denial of Physical Activity

While Plaintiff is barred by the *Heck* doctrine from attacking the validity of his 1-year disciplinary restrictions on yard and other privileges, his Eighth Amendment claim is not precluded by *Heck*. This claim arises from the particular conditions of his segregation cells, and the denial of even the limited access to out-of-cell time which his disciplinary restriction should have allowed. These factors resulted in a lengthy period during which Plaintiff was allegedly deprived of *any* opportunity to engage in meaningful physical activity, early in his segregation term. Plaintiff also claims that after the yard restriction was lifted in December 2016, he still was

7

not allowed sufficient time out of his cell to exercise, and he could not exercise inside the small cell.

The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Two elements are required to establish a violation of the Eighth Amendment's cruel and unusual punishments clause with regards to any conditions of confinement in prison. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective conditions must have resulted in an unquestioned and serious deprivation of basic human needs such as food, medical care, sanitation, or physical safety. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The second requirement is a subjective element – establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer*, 511 U.S. at 837, 842. The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm from the conditions. *Farmer*, 511 U.S. at 842. It is well-settled that mere negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

The Seventh Circuit has noted that a "[l]ack of exercise could rise to a constitutional violation where movement is denied and muscles are allowed to atrophy, and the health of the individual is threatened." *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988); *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), *cert. denied*, 479 U.S. 817 (1986). "Given current

norms, exercise is no longer considered an optional form of recreation, but is instead a necessary requirement for physical and mental well-being." *Delaney v. DeTella*, 256 F.3d 679, 683-84 (7th Cir. 2001). *See also Turley v. Rednour*, 729 F.3d 645, 652-53 (7th Cir. 2013) (plaintiff stated Eighth Amendment claim where cumulative effect of repeated lockdowns deprived him of yard privileges, and cell was too small for physical activity).

Here, Plaintiff alleges that the John Doe Sergeants #1-3 each deprived him of one monthly opportunity to go to the yard. Because of this and the small size of his cell which did not allow sufficient space for exercise, Plaintiff was unable to engage in physical activity for a 100-day period. He asserts that he suffered physical and psychological harm as a result. These allegations support an Eighth Amendment claim against the John Doe Sergeants #1-3.

Plaintiff complained to Counselor Nippe about these yard denials in August 2016, both in a grievance and in person. Her verbal response to him was that he should stop filing grievances, because he would not be allowed to go out. The grievance informed Nippe that Plaintiff had been unable to do any meaningful exercise for over two months. (Doc. 1, p. 24). Ordinarily, a prison official who merely responds to a grievance will not be liable for a constitutional violation caused by a different person. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim"). If an official allows unconstitutional conduct to occur or continue with her knowledge and consent, however, this may amount to deliberate indifference. *See Wilson v. Warren County, Illinois*, 830 F.3d 464, 469 (7th Cir. 2016); *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye" in order for liability to attach). The Complaint suggests that Nippe may have had sufficient

9

knowledge of Plaintiff's continuing exclusion from physical activity, to sustain a deliberate indifference claim. At this early stage, the claim against Nippe is not subject to dismissal under § 1915A.

Plaintiff also alleges that he informed Butler in September 2016 about his exclusion from yard for 100 days, the fact that he was unable to exercise in his small cell, and the physical and psychological symptoms he had developed. (Doc. 1, pp. 25-26). It is unclear whether Butler ever received the grievance. If she did, however, she was arguably deliberately indifferent to the conditions that prevented Plaintiff from exercising, and thus threatened his physical and mental health. Plaintiff may therefore proceed with his Eighth Amendment claim against Butler in **Count 2**.[2]

Defendants Brookman and Pierce shall be dismissed from Count 2, however. Nothing in the Complaint indicates that Brookman or Pierce had any knowledge about the conditions of Plaintiff's confinement in the small cell during his time in segregation or the lengthy denial of out-of-cell activity which allegedly harmed his health.

Plaintiff has named current Warden Lashbrook in connection with his Eighth Amendment claims, in her official capacity only. (Doc. 1, pp. 1, 9). This is entirely appropriate, because the Complaint does not include any facts to suggest that she was personally involved in any of the alleged unconstitutional conduct. She is, however, the appropriate official to implement any injunctive relief to which Plaintiff might be entitled as the action proceeds. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out). Lashbrook shall therefore remain as a Defendant, in her official capacity.

---

[2] While Plaintiff also complains that he did not get enough out-of-cell exercise time between December 2016 and May 2017, his pleading does not describe any attempt on his part to request any Defendant to remedy the situation during that time frame.

The deliberate indifference claim in **Count 2** for denial of the opportunity for exercise shall proceed at this time against the John Doe Sergeants #1-3, Nippe, and Butler in their individual capacities, and against Lashbrook in her official capacity. Plaintiff must identify the John Doe Defendants by name, however, before they can be served with notice of the action. Lashbrook is also the appropriate official to respond to discovery requests aimed at learning the names of the John Doe Sergeants #1-3.

**Count 3 – Unsanitary Cell Conditions**

Plaintiff claims that the cell (No. 246) where he was housed between June 21 and December 23, 2016, was filthy to the degree that he was unable to clean it, including layers of "gunk" on the chuckhole through which he received his food, rust on all metal surfaces, and an infestation of insects and spiders. The cell was poorly ventilated due to the solid front wall. He alleges that these unsanitary conditions caused his rash (jock itch). (Doc. 1, p. 12). These objective conditions may be serious enough to trigger Eighth Amendment concerns. *See Thomas v. Illinois*, 697 F.3d 612, 614-15 (7th Cir. 2012) (depending on severity, duration, nature of the risk, and susceptibility of the inmate, prison conditions may violate the Eighth Amendment if they caused either physical, psychological, or probabilistic harm).

Turning to the subjective element of the claim, Plaintiff's September 2016 emergency grievance to Butler included his complaints about the unsanitary conditions in Cell 246. (Doc. 1, pp. 25-26). If Butler was aware of the conditions, yet failed to take any steps to mitigate the risk of harm to Plaintiff, Plaintiff may be able to sustain a constitutional claim against her.

The deliberate indifference claim for unsanitary cell conditions in **Count 3** shall proceed against Butler, in her individual capacity. Lashbrook shall remain in this claim in her official capacity only.

## Identification of Unknown Defendants

As noted above, Plaintiff shall be allowed to proceed with Count 2 against the John Doe Sergeants #1-3. However, these Defendants must be identified with particularity before service of the Complaint can be made on them. Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, Lashbrook remains as a Defendant in her official capacity only, as Menard Warden. In that capacity, she shall be responsible for responding to discovery aimed at identifying these unknown Defendants. Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of the John Doe Sergeants #1-3 are discovered, Plaintiff shall file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

## Disposition

**COUNT 1** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. **BROOKMAN** and **PIERCE** are **DISMISSED** from this action without prejudice.

The Clerk of Court shall prepare for **BUTLER, NIPPE,** and **LASHBROOK (Official Capacity only)**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of

Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on Defendants **JOHN DOE SERGEANTS #1-3** until such time as Plaintiff has identified them by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that

his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 30, 2018**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**